IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TOWER DEVELOPMENT, INC., )  CIVIL 18-00330 LEK-KJM
          )
    Plaintiff,  )
          )
  vs.      )
          )
TIMBERS RESORT MANAGEMENT, )
LLC; DAVID A. BURDEN; GREGORY )
SPENCER; and DOE DEFENDANTS )
1-100,       )
          )
    Defendants.  )
_____ )

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND STAY PROCEEDINGS**

    On September 4, 2018, Defendants Timbers Resort
Management, LLC ("Timbers"), David A. Burden ("Burden"), and
Gregory Spencer ("Spencer," and collectively "Defendants") filed
their Motion to Dismiss and Stay Proceedings Under the Colorado
River Abstention Doctrine and Pursuant to Fed. R. Civ. P.
12(b)(5) ("Motion"). [Dkt. no. 5.] Plaintiff Tower Development,
Inc. ("TDI" or "Plaintiff") filed its memorandum in opposition on
October 1, 2018, and Defendants filed their reply on October 5,
2018. [Dkt. nos. 21, 26.] This matter came on for hearing on
October 22, 2018. Defendants' Motion is hereby denied for the
reasons set forth below.

## BACKGROUND

### I. Hawai`i Action

Plaintiff initiated this action on July 26, 2018 in the Circuit Court of the Fifth Circuit, State of Hawai`i under Civil No. 18-1-0108. [Notice of Removal Pursuant to 28 U.S.C. §§ 1332(a), 1441(a) & (b), filed 8/27/18 (dkt. no. 1), Exh. A (Complaint).] The Complaint arises out of a contract dispute concerning the development of a luxury hotel property on the Island of Kauai. Plaintiff is a Hawai`i real estate investment and development company specializing in local development. [Complaint at ¶ 2.] According to the Complaint, Timbers is a Colorado limited liability company doing business in the County of Kauai; Burden and Spencer are residents of the State of Colorado.[1] [Id. at ¶¶ 4, 7-8.] On April 25, 2014, Plaintiff entered into a purchase and sale agreement ("PSA") with Kauai Lagoons LLC and MORI Golf (Kauai) (collectively "Seller") for $60,000,000 to obtain the development rights to a 450-acre oceanfront luxury hotel/resort ("Project"). [Id. at ¶¶ 21, 109.]

---

[1] Spencer is the Chief Executive Officer of Timbers, and Burden is the founder and Executive Chairman of Timbers. [Motion, Decl. of Gregory Spencer in Supp. of Defs.' Motion to Dismiss and Stay Proceedings ("Spencer Decl.") at ¶ 2; id., Decl. of David A. Burden in Supp. of Defs.' Motion to Dismiss and Stay Proceedings ("Burden Decl.") at ¶ 2.] Spencer is currently a resident of Florida, and Burden is currently a resident of South Carolina. [Spencer Decl. at ¶ 3; Burden Decl. at ¶ 3.]

Thereafter, Plaintiff approached Oaktree Real Estate ("Oaktree") to form a joint venture for the development of the Project. [Id. at ¶¶ 112-15.]

TDI began negotiating with Timbers in June 2014 to discuss the development of the Project. [Id. at ¶ 116.] Plaintiff alleges Burden and Spencer subsequently communicated with Oaktree to sell the controlling interest of Timbers to Oaktree (the "Timbers Deal"). [Id. at ¶¶ 117-21.] Plaintiff alleges it had no knowledge of the Timbers Deal when it signed a Confidentiality, Non-Disclosure and Non-Compete Agreement with Timbers regarding the Project ("NCA"). The NCA included a non-compete clause that precluded Timbers from competing with Plaintiff in the event Timbers decided not to enter into the joint venture. [Id. at ¶¶ 30-31.] Under the NCA, Timbers agreed to keep all Project information confidential, and to not interfere with Plaintiff with respect to the Project. [Id. at ¶¶ 127-28.]

Plaintiff alleges Defendants breached the NCA shortly after it was signed, by:

1)    formulating their own business plan to compete with Plaintiff and presenting it to Oaktree, thereby sharing information with third parties;

2)    creating and entering into a contract for development of the Project to benefit Timbers, in direct competition with Plaintiff;

3

3)      approving an $8,000,000 land parcel allocation for the same
        parcel Plaintiff had previously proposed to another luxury
        hotel brand at over $20,000,000, undercutting Plaintiff's
        prior proposal;

4)      refusing to provide Plaintiff with access to documents
        reflecting details of contracts/agreements in favor of
        Timbers related to the Project;

5)      accepting fees in direct violation of the NCA; and

6)      implementing Timbers' development plan in lieu of
        Plaintiff's development plan, thereby competing directly
        with Plaintiff's intended business prospects.

[Id. at ¶¶ 101, 235.]

        On August 12, 2014, Plaintiff and Oaktree negotiated

what Plaintiff believed to be a finalized joint venture

("Original JV").  The parties to the Original JV included:

1) Plaintiff; 2) a subsidiary of Oaktree; and 3) a funding

investment entity and affiliate/non-party Tower Hotels Fund 2014,

LLC ("THF" and collectively "Original JV Parties").  [Id. at

¶¶ 161-63.]  Under the Original JV, Plaintiff was entitled to a

development fee and a "promote interest" fee.  [Id. at ¶ 165.]

        On August 28, 2014, Oaktree became the majority

shareholder of Timbers, but Plaintiff alleges neither Timbers nor

Oaktree informed Plaintiff of this change.  [Id. at ¶ 156.]

According to Plaintiff, after selling Timbers's majority shares

to Oaktree, Defendants sought to influence Oaktree to push

Plaintiff out of the Kauai Deal in order to advance the Timbers

4

Deal and transfer to Defendants certain development, sales, and management fees, as well as sponsor promote profits, and other fees and profits, to the detriment of Plaintiff. [Id. at ¶ 159.]

On or about December 23, 2014, Oaktree asked Plaintiff to modify the Original JV and amend the Original JV Parties to instead reflect: 1) THF; 2) Tower Hotels Kauai, LLC; 3) Kauai Lagoons Grand Avenue Partners, LLC, Oaktree's subsidiary ("Kauai GAP");[2] 4) and Plaintiff ("Modified JV"). [Id. at ¶¶ 196-98.] The Modified JV assigned Plaintiff as the "Local Development Manager" and assigned Timbers as the "Development Manager." [Id. at ¶¶ 200-02.] The signatories to the Modified JV are: 1) Edward Bushor for Plaintiff and THF; and 2) Taejo Kim and Derek Smith for Kauai GAP.[3] [Id. at ¶ 206.] Plaintiff alleges the Modified JV was predicated on Timbers's breach of the NCA, and that Timbers entered into subsequent agreements for fees and/or compensation in breach of the NCA. [Id. at ¶¶ 218, 225, 228.] On December 31, 2014, escrow was closed and the PSA was finalized.

---

[2] It is unclear whether Kauai GAP is the Oaktree subsidiary that was one of the Original JV Parties.

[3] Mr. Bushor is the President of TDI. [Complaint at ¶ 54.] According to the Complaint, Mr. Kim and Mr. Smith are both "Board of Directors of Timbers Defendant and also executives of Oaktree Real Estate." [Id. at ¶ 199.]

Plaintiff alleges breach of contract ("Count I"), breach of the covenant of good faith and fair dealing ("Count II"), fraud ("Count III"), intentional misrepresentation ("Count IV"), negligent misrepresentation ("Count V"), tortious interference with prospective economic advantage ("Count VI"), unjust enrichment ("Count VII"), and conversion ("Count VIII"). [Complaint at pgs. 53-61.] Plaintiff requests special, general, and punitive damages, and any other appropriate relief. [Id., Prayer for Relief.]

## II. California Action

Related to the instant matter, is the action filed on December 22, 2015, by THF, individually, and derivatively on behalf of Tower Kauai Lagoons, LLC ("TKL"), in the Superior Court of the State of California, County of Los Angeles, Tower Hotels Fund 2014, LLC, et al. v. Kauai Lagoons Grand Avenue Partners, LLC, et al., Case No. BC 604859 ("California Action"). [Motion, Decl. of Scott J. Street ("Street Motion Decl."), Exh. A (complaint filed in California Action ("California Complaint")).] The California Complaint names as defendants: Kauai GAP, Timbers, and TKL, as a nominal defendant (collectively "California Defendants"). [Id. at pg. 1.] THF alleges that, pursuant to the "Limited Liability Company Agreement of TKL, entered into as of December 29, 2014" ("Operating Agreement"), THF and Kauai GAP are

6

both "'Class A' Member[s]" of TKL, and TKL is also a "'Class B'
Member." [Id. at ¶¶ 6, 9.] Timbers is defined under the
Operating Agreement as a "Manager" of TKL, but THF alleges
Timbers is not entitled to any separate compensation or fees for
its managerial obligations. [Id. at ¶ 11.] THF also alleges,
inter alia, that Kauai GAP violated the Operating Agreement by:
entering into an agreement with Timbers without THF's prior
agreement or approval; [id. at ¶ 12;] requiring THF to make a
capital contribution ("Capital Call") not otherwise required by
the Operating Agreement; [id. at ¶ 16;] and failing to provide
THF with copies of the books and records of TKL, [id. at ¶ 27].

The California Complaint alleges: breach of fiduciary
duty against Kauai GAP and Timbers ("California Count I"); breach
of contract against Kauai GAP and Timbers ("California Count
II"); a claim against the California Defendants for an accounting
("California Count III"); and a claim seeking declaratory relief
against the California Defendants ("California Count IV"). [Id.
at pgs. 1-11.] THF requests general, punitive/exemplary damages,
an accounting, a declaratory judgment with regard to the Fourth
Cause of Action, a temporary restraining order, preliminary
injunction, and a permanent injunction against the California
Defendants entering into any contracts without THF's consent,
voiding any other agreements entered into, and enjoining

California Defendants from paying any fees and/or compensation without THF's consent.  THF also seeks its attorneys' fees and any other appropriate relief.  [Id., Prayer for Relief.]

The California Defendants filed demurrers to the California Complaint and THF's first amended complaint ("California First Amended Complaint"),[4] which the California state court sustained in part, striking: THF's claim against Timbers for breach of contract and THF's request for punitive damages in the California Complaint; and THF's fraud claims alleged in the California First Amended Complaint.  [Street Motion Decl., Exh. H (tentative ruling dated 4/29/16 in California Action), Exh. I (tentative ruling dated 5/22/17 in California Action).]

On August 8, 2018, Kauai GAP filed a motion for leave to file a cross-complaint in the California Action.  [Street Motion Decl., Exh. K (Kauai GAP's motion).]  The motion was granted, and Kauai GAP filed its cross-complaint on September 10, 2018.  See Mem. in Opp., Decl. of Edward Bushor ("Bushor Decl."),

_____

[4] The parties have not provided this Court with a copy of the California First Amended Complaint.  THF later moved to amend the California First Amended Complaint, but the motion was denied.  [Street Motion Decl., Exh. J (motion for leave to amend, dated 8/17/18); Reply, Decl. of Scott J. Street ("Street Reply Decl."), Exh. B (Notice of Ruling on Pltf.'s Motion for Leave to File Amendment to First Amended Complaint, filed 9/11/18).]

Exh. 3 (conformed copy of the original cross-complaint in the California Action ("California Cross-Complaint")). The California Cross-Complaint names Edward Bushor, individually, THF, Tower Hotels Kauai, LLC, TDI, and ROES 1 through 10. [Id. at pg. 1.] In the California Cross-Complaint, Kauai GAP alleges, *inter alia*, that TDI and Oaktree formed TKL and entered into the TKL Operating Agreement in order to develop the Property. [Id. at ¶ 6.] Kauai GAP also alleges Mr. Bushor, who owned TDI, attempted and failed to find another investor to replace Oaktree, then tried to force Oaktree into buying out TDI at a premium. [Id. at ¶¶ 8-9.] TDI's arguments to force Oaktree to buy TDI out of the Project were based on the alleged falsehood that: TDI did not know of Timbers's involvement in the Project; and TDI could block Oaktree's proposed development because it included a Timbers property. [Id. at ¶ 9.] Simultaneously, TDI obstructed Oaktree's efforts to develop the Property, in bad faith and for the sole purpose of pressuring Oaktree to sell its interest or buy out TDI's interest in the Project. [Id. at ¶ 10.] Kauai GAP alleges claims for breach of contract, fraud, and declaratory relief. [Id. at pgs. 11, 13, 14.]

The instant Motion seeks dismissal of the Complaint based on: 1) defective service of process under Fed. R. Civ. P. 12(b)(5); 2) the forum-selection clause in the Operating

9

Agreement; and 3) the doctrine set forth in <u>Colorado River Water</u>
<u>Conservation District v. United States</u>, 424 U.S. 800 (1976).  In
the alternative, the Motion seeks a stay pursuant to the <u>Colorado</u>
<u>River</u> doctrine.

**DISCUSSION**

**I.    Dismissal Under Federal**
       **Rules of Civil Procedure Rule 12(b)(5)**

        Defendants' Motion initially sought to dismiss the
Complaint on the ground that Plaintiff failed to personally serve
Defendants.  <u>See</u> Fed. R. Civ. P. 4(e).  Plaintiff and Defendants
have since entered into a stipulation regarding service of the
Complaint, summons, and demand for jury trial on behalf of
Defendants and Plaintiffs, wherein Defendants have authorized
their counsel to accept and/or waive service.  [Stipulation
Regarding Service of Complaint, Demand for Jury Trial and Summons
Filed on July 26, 2018 upon Defs. ("Service Stipulation"), filed
10/10/18 (dkt. no. 27).]  Accordingly, the Court denies the
portion of the Motion regarding improper service as moot.

**II.   Whether Plaintiff is a Third-Party**
       **Beneficiary to the Operating Agreement**

        At the outset, the Court must determine whether
Plaintiff is a third-party beneficiary to the Operating Agreement
as it affects the overall analysis of the Motion.  Defendants
argue the Operating Agreement contains a forum selection clause

requiring Plaintiff to file all legal disputes arising out of the

Operating Agreement in Los Angeles, not Hawai`i.[5]  [Mem. in Supp.

of Motion at 16.]  Additionally, the choice of law provision at

§ 14.03 of the Operating Agreement states that "[t]his Agreement

shall be governed by and construed in accordance with the laws of

the State of Delaware applicable to agreements made and to be

performed wholly within that State."  [California Complaint,

Exh. A (Operating Agreement) at 50.]  Defendants concede

Plaintiff did not sign the Operating Agreement; however, they

argue Plaintiff is a third-party beneficiary because it accepted

$480,000, pursuant to the Operating Agreement, and is an

affiliate of THF.  Plaintiff has submitted evidence that: it did

not sign the Operating Agreement; is a separate entity from THF;

and is not an investor in THF.  [Mem. in Opp., Decl. of Edward

Bushor ("Bushor Decl.") at ¶ 5, 9.]

_____

[5] The forum selection clause of the Operating Agreement
provides:

> Each of the Members consents to the jurisdiction
> of any court in Los Angeles, California for any
> action arising out of matters related to this
> Agreement.  Each of the Members waives the right
> to commence an action in connection with this
> Agreement in any court outside of Los Angeles,
> California.

[California Complaint, Exh. A (Operating Agreement) at 53,
§ 14.17.]

Defendants assert the Operating Agreement and any claims arising therefrom are governed by the laws of Delaware. Because Plaintiff was not a party to the Operating Agreement, it is not readily clear whether this Court must apply the law of the forum state, or Delaware law. However, the Court need not resolve this issue because Plaintiff is not a third-party beneficiary under either state's laws. Under both states' laws, a party must be an intended third-party beneficiary in order to have rights and obligations under the governing contract. <u>See Ass'n of Apartment Owners of Newtown Meadows ex rel. Bd. of Dirs. v. Venture 15, Inc.</u>, 115 Hawai`i 232, 269-70, 167 P.3d 225, 262-63 (2007) ("Generally, 'third parties do not have enforceable contract rights. The exception to the general rule involves **intended** third-party beneficiaries.'" (emphasis in <u>Newtown Meadows</u>) (quoting <u>Pancakes of Hawai`i, Inc. v. Pomare Props. Corp.</u>, 85 Hawai`i 300, 309, 944 P.2d 97, 106 (App. 1997)); <u>E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.</u>, 269 F.3d 187, 196 (3d Cir. 2001) ("Under Delaware law . . . to qualify as a third party beneficiary of a contract, (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to

12

benefit the third party must be a material part of the parties'
purpose in entering into the contract." (citing <u>Guardian Constr.</u>
<u>Co. v. Tetra Tech Richardson, Inc.</u>, 583 A.2d 1378, 1386 (Del.
Super. Ct. 1990))).  Further, under Hawai`i law, a third-party
beneficiary's rights are limited to the terms of the promise.
<u>Newtown Meadows</u>, 115 Hawai`i at 269-70, 167 P.3d at 262-63.

Defendants generally assert that Plaintiff received
$480,000 under the Operating Agreement, but do not address the
basis for compensation, whether it was a material purpose of
entering into the agreement, or what provisions Plaintiff would
be bound by in accepting the compensation.  Further, nothing in
the terms of the Operating Agreement suggests the parties
intended to confer third-party beneficiary status on Plaintiff.
Accordingly, Defendants' argument regarding improper venue based
on the forum selection clause is rejected because Plaintiff is
not an intended third-party beneficiary of the Operating
Agreement, and is not bound by its terms.  The Motion is denied
as to the request for dismissal based on improper venue.

## III. **The *Colorado River* Factors**

"Generally, 'the pendency of an action in the state
court is no bar to the proceedings concerning the same matter in
the Federal court having jurisdiction . . . .'" <u>Seneca Ins. Co.</u>
<u>v. Strange Land, Inc.</u>, 862 F.3d 835, 841 (9th Cir. 2017)

(alteration in Seneca Ins.) (quoting Colo. River, 424 U.S. at

817, 96 S. Ct. 1236).  The Ninth Circuit has stated:

> Under "exceedingly rare" circumstances, Smith [v.
> Cent. Ariz. Water Conservation Dist., 418 F.3d
> [1028,] 1033 [(9th Cir. 2005)], "considerations of
> wise judicial administration, giving regard to
> conservation of judicial resources and
> comprehensive disposition of litigation," may
> counsel in favor of abstention, Colo. River, 424
> U.S. at 817 (alteration omitted) (internal
> quotation marks omitted).
>
> Colorado River and its progeny provide a
> multi-pronged test for determining whether
> "exceptional circumstances" exist warranting
> federal abstention from concurrent federal and
> state proceedings.  We evaluate eight factors in
> assessing the appropriateness of a Colorado River
> stay or dismissal:
>
>> (1) which court first assumed jurisdiction
>> over any property at stake; (2) the
>> inconvenience of the federal forum; (3) the
>> desire to avoid piecemeal litigation; (4) the
>> order in which the forums obtained
>> jurisdiction; (5) whether federal law or
>> state law provides the rule of decision on
>> the merits; (6) whether the state court
>> proceedings can adequately protect the rights
>> of the federal litigants; (7) the desire to
>> avoid forum shopping; and (8) whether the
>> state court proceedings will resolve all
>> issues before the federal court.
>
> R.R. St. [& Co. v. Transp. Ins. Co.], 656 F.3d
> [966,] 978-79 [(9th Cir. 2011)].

Id. at 841-42.  The Court considers the eight Colorado River

factors to determine whether dismissal or stay of this action is

appropriate, in favor of the California Action.

The first factor is neutral since neither this Court nor the California state court has exercised jurisdiction over a res. See Seneca Ins., 862 F. 3d at 842. The parties agree that a contract – not property – is in dispute, but differ in their opinion as to how an inapplicable factor weighs in the overall analysis under Colorado River. The Ninth Circuit has stated, "[s]ome factors may not apply in some cases, and '[a]ny doubt as to whether a factor exists should be resolved against a stay' or dismissal." Montanore Minerals Corp. v. Bakie, 867 F.3d 1160, 1166 (9th Cir. 2017) (citation omitted) (quoting Seneca Ins., 862 F.3d at 842).

The second factor weighs against abstention. Defendants argue that litigation in this district will pose a significant hardship as Timbers's principal place of business is in Colorado, and Burden and Spencer reside in Florida and South Carolina, respectively. [Spencer Decl. at ¶¶ 2-3; Burden Decl. at ¶¶ 2-3.] Defendants' lead counsel are also located in Los Angeles, California, and currently represent Defendants in the California Action, where they have in their possession most of the evidence that will be necessary for the instant litigation. [Street Motion Decl. at ¶¶ 18-19.]

Plaintiff contends Defendants have not met their burden in establishing an actual hardship. Plaintiffs argue Defendants'

choice of counsel in Los Angeles is irrelevant where Defendants have already secured local counsel, and any documents already produced in the California Action can be replicated for production in the instant case. [Mem. in Opp. at 11-12.] This Court agrees. Defendants have failed to show that the "inconvenience of the forum is so great that this factor points toward abstention." See Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1368 (9th Cir. 1990) (citation and quotation marks omitted). Further, Defendants had no difficulty obtaining local counsel and having their California counsel admitted pro hac vice. See Order Granting Motion to Appear Pro Hac Vice as to Attorney Mark D. Baute, filed 9/6/18 (dkt. no. 11); Order Granting Motion to Appear Pro Hac Vice as to Attorney Scott J. Street, filed 9/6/18 (dkt. no. 12). Moreover, Defendants have not demonstrated that it would be any more difficult for Spencer or Burden to fly from Florida and South Carolina to defend the California Action, than it would be to fly to Hawai`i to defend the instant action. The Court also considers that Plaintiff is located in Hawai`i and the substance of the contract deals with development of land in the forum state. These circumstances do not demonstrate the inconvenience of the forum is so great that it warrants abstention.

Third, the Court considers "whether there are special concerns associated with resolving the issues in a piecemeal fashion via parallel proceedings. Piecemeal litigation occurs when different tribunals consider the same issues, thereby duplicating efforts and possibly reaching different results." Seneca Ins., 862 F.3d at 842. Abstention is not warranted by a general preference to avoid piecemeal litigation, since any case in which Colorado River is implicated will likely involve the potential for conflicting results, piecemeal litigation, or some duplication of judicial efforts. Id. (citing Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines, 925 F.2d 1193, 1195 (9th Cir. 1991)). "[A] correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." Travelers Indem., 914 F.2d at 1369 (case involving ordinary contract and tort issues unlike Colorado River doctrine circumstances). Although Defendants have argued the California Action and instant case are factually identical, the contractual claims and remedies are different. The California Action concerns alleged breaches of the Operating Agreement based on § 7.04(a) (regarding prior approval of payments to an affiliate of a member of the Operating Agreement), and § 4.02 (relating to each member's capital

17

contribution), and is in part a derivative action on behalf of the minority shareholders of TKL.

The case before this Court concerns the NCA and Defendants' obligation not to disclose information and/or compete with Plaintiff, which Plaintiff alleges Defendants breached in their dealings with Oaktree. While there may be some overlap in testimony and other records, the disputes are based on two separate contracts with different provisions. Defendants point out TDI is now a party to the California Action by virtue of the California Cross-Complaint, filed on August 8, 2018, and may raise its claims against Timbers – which is already a defendant in the California Action - since it arises out of the same operative nucleus of events. [Mem. in Supp. of Motion at 13.] This Court disagrees that the California Defendants' strategic filing meets the "exceptional circumstances" envisioned by Colorado River. Thus, the third factor does not weigh in favor of abstention.

Fourth, the Court considers the order in which the actions were filed. Courts are cautioned to apply this factor "in a pragmatic, flexible manner with a view to the realities of the case at hand," not in a mechanical approach. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983). "[P]riority should not be measured exclusively by which complaint

was filed first, but rather in terms of how much progress has been made in the two actions." Id. (noting there were no substantial proceedings in the state court case, but the federal case had made progress to a near resolution of the arbitrability issue and was well ahead of the state court case). The instant matter was first filed on July 26, 2018 in the Circuit Court of the Fifth Circuit, State of Hawai`i, but was subsequently removed to this district court on August 27, 2018. In contrast, the California Action was initiated on December 22, 2015 by THF, individually, and derivatively on behalf of TKL, and the California state court has made substantive rulings pertaining to THF's claims for fraud and punitive damages, and has denied THF's request to include a rescission claim. Plaintiff argues the prior history of the California Action is irrelevant since TDI was brought in as a cross-defendant nearly three years later on September 10, 2018, upon the filing of the California Cross-Complaint. [Bushor Decl. at ¶¶ 6, 19; California Cross-Complaint.] Additionally, the California Cross-Complaint does not address the NCA; rather Kauai GAP alleges breach of contract, fraud, and seeks declaratory relief based on the Operating Agreement. [California Cross-Complaint at pgs. 11-15.] Overall, while the California Action was filed first, it did not involve

claims arising from the NCA and did not progress in such a way
that would warrant abstention.

Fifth, the Court considers whether state or federal law
governs the dispute, and whether there are any "rare
circumstances" that would warrant abstention. <u>See</u> <u>Seneca Ins.</u>,
862 F.3d at 844 (citations and quotation marks omitted). The
presence of federal law issues will weigh against abstention;
however, "the 'presence of state-law issues may weigh in favor of
that surrender' only 'in some rare circumstances.'" <u>Travelers</u>
<u>Indem.</u>, 914 F.2d at 1370 (quoting <u>Moses H. Cone</u>, 460 U.S. at 26,
103 S. Ct. at 942)). "Rare circumstances" are not met where
cases only involve "routine issues of state law" including
"misrepresentation, breach of fiduciary duty, and breach of
contract – which the district court is fully capable of
deciding." <u>Id.</u> Here, Plaintiff alleges breach of contract,
fraud, misrepresentation, tortious interference with prospective
economic advantage, unjust enrichment, and conversion. This case
does not display any rare circumstances and does not involve
novel state law claims. Defendants' abstention request is also
made in favor of Plaintiff re-filing its state law claims,
arising under Hawai`i law, in the California Action. However,
the California state court is no more suited to apply Hawai`i law
in adjudicating Plaintiff's claims than this district court. <u>Cf.</u>

<u>Montanore Minerals</u>, 867 F.3d at 1169 (citations omitted)

(condemnation action involving difficult questions under Montana

law placed "[t]he state court . . . in a better position to

address these issues than . . . the federal court."). Therefore,

this factor does not weigh in favor of abstention.

Sixth, the Court considers whether the California

Action will adequately protect the rights of federal litigants.

The Ninth Circuit has stated:

> The adequacy factor looks to whether the state
> court might be unable to enforce federal rights.
> <u>See, e.g.</u>, <u>Cone Mem'l Hosp.</u>, 460 U.S. at 26–27,
> 103 S. Ct. 927 (finding state proceedings might be
> inadequate because it was unclear whether state
> courts would compel arbitration under the Federal
> Arbitration Act); <u>[Travelers Indem.]</u>, 914 F.2d at
> 1370 ("This factor involves the **state** court's
> adequacy to protect **federal** rights, not the
> federal court's adequacy to protect state rights."
> (citing <u>Cone Mem'l Hosp.</u>, 460 U.S. at 26, 103 S.
> Ct. 927)).

<u>Seneca Ins.</u>, 862 F.3d at 845 (emphases in <u>Seneca Ins.</u>). Thus,

this factor is inapplicable since there are no federal claims at

issue in the instant action.

Seventh, with regard to forum shopping, the parties

unremarkably disagree as to who wronged whom first. Defendants

argue Plaintiff, after two and a half years of litigating in the

California Action, filed suit in Hawai`i state court. Plaintiff

argues Defendants have orchestrated the current issue by removing

the instant action to the district court, and filing the
California Cross-Complaint to impede this action.  Plaintiff
points out that paragraph 6.a. of the NCA provides the NCA is
governed by Hawai`i law, [Bushor Decl., Exh. 1 (NCA) at 2,] and
Plaintiffs rightfully initiated the action in Hawai`i state
court.  The Ninth Circuit has stated: "It typically does not
constitute forum shopping where a party 'acted within his rights
in filing a suit in the forum of his choice,' [Travelers Indem.],
914 F.2d at 1371, even where '[t]he chronology of events suggests
that both parties took a somewhat opportunistic approach to th[e]
litigation.'"  Seneca Ins., 862 F.3d at 846 (some citations
omitted) (quoting R.R. St., 656 F.3d at 981).  There does not
appear to be evidence of forum shopping, despite the disagreement
of the parties.  Thus, this factor weighs against abstention.

        Finally, the Court considers the "parallelism factor,"
which analyzes whether the state litigation will completely and
promptly resolve the issues between the parties in the federal
action.  See id. at 845 (citations omitted).  "[T]he parallelism
factor considers whether the parallel proceedings address
'substantially similar' claims."  Id.  Exact parallelism is not
necessary, but substantial similarity of claims is required in
order to warrant abstention.  Id.  The Court concludes that the
California Action, as it stands, would not address Plaintiff's

claims as it is not substantially similar to the instant action. As noted above, the California Action concerns the Operating Agreement and applies Delaware law, involves different parties, and concerns provisions unique to that agreement. In contrast, the instant action concerns facts and claims arising out of the NCA, which is governed by Hawai`i law, and involves a separate dispute concerning the non-compete clause of the NCA. The Court finds the matters are not substantially parallel to warrant abstention. While parallelism is a necessary element of abstention, it is "not sufficient to counsel in favor of abstention" on its own. See id.

On balance, Defendants have failed to show any "exceptional circumstances" exist, and upon weighing the eight factors set forth in Colorado River, the Court concludes abstention is not warranted. To the extent the Motion seeks dismissal or a stay based on the Colorado River doctrine, the Motion is denied.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss and Stay Under the Colorado River Abstention Doctrine and Rule 12(b)(5), filed September 4, 2018, is HEREBY DENIED. Pursuant to the parties' Service Stipulation, Defendants must

file their answer to the Complaint within thirty days of the
filing of this Order.  [Service Stipulation at 3.]

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, November 30, 2018.



                          /s/ Leslie E. Kobayashi
                       Leslie E. Kobayashi
                       United States District Judge

**TOWER DEVELOPMENT, INC. VS. TIMBERS RESORT MANAGEMENT, LLC, ET
AL; CIVIL 18-00330 LEK-KJM; ORDER DENYING DEFENDANTS' MOTION TO
DISMISS AND STAY PROCEEDINGS**